Good morning. Betty Brodsky on behalf of the appellants. May it please the court. The issue before the court this morning is the interpretation of a single sentence in the parties below side letter agreement. The district court erred in granting summary judgment finding that that condition precedent was expressed in nature, further erred in interpreting ambiguous language that could not be resolved as a matter of law, and in forfeiting the appellant's rights to the underlying benefit of the contract at issue. Mr. Brodsky, I'm not sure I understand the first point. I understand the point about ambiguity, but whatever it is, it's expressed. I mean there's nothing implicit here. There's no specific language. It's written into the contract. It's either a condition precedent unambiguously or it's not, right? Well, it could be either an expressed condition precedent or a constructive condition precedent. Yeah, but constructive is something that is implied as a matter of law by the court. It's not something the parties create. This is something the parties created. It either is or is not an unambiguous condition precedent. Isn't that the only real issue here? I would disagree, Your Honor, on the basis of the Bank of New York Mellon case, where in that matter the parties had agreed that the trustee in a residential mortgage backed securities trust, within three days of learning of a default in one of the mortgages that comprised the trust, had to give notice to the bank such that the bank would trigger the bank's repurchase obligation for that defaulted mortgage. The trial court below found that it was an expressed condition precedent, and this court disagreed, finding that because it was, although there was a requirement that notice be given within three days, which is not unambiguously state that it was expressed in nature, such that there would be a fatal consequence if it was not followed, the court determined that the district court erred and reversed on the basis that it was an expressed condition precedent, and what's critical about that case and really why it's on all fours with this one is, in the next sentence, the parties in that Bank of New York Mellon case agreed that it was an expressed condition precedent. They said if 30 days passes and the bank hasn't repurchased, X happens. Here, in the very next sentence, the next two sentences in this side letter, the parties agreed as to an expressed condition precedent. They said once these open issues are resolved, we're going to reason, or asks us to make changes to which we do not agree, all of our obligations cease. The parties knew how to write an expressed condition precedent, and they did. They just did not do it in this first sentence, and in the Oppenheimer case from the New York Court of Appeals, this court got the guidance that did you raise this argument before the district court? The answer is we did not, Your Honor, but the district court did not address whether it was expressed or conditional, and the fact that it was not raised below is not preclusive. This court has the discretion to consider that argument because it is a pure matter of law. And you also did not raise the second claim you make, which is that it's ambiguous. The condition is ambiguous. In fact, you argued the opposite before the district court. Did you not? Well, Your Honor, I would couch it more in terms of we urged one interpretation and the appellee urged another interpretation, which is we said both conditions have been satisfied. It doesn't matter whether both pieces of the garage had the restriction from the Office of Attorney General lifted. Well, didn't you actually tell the district court that emphatically that the agreement was not ambiguous? That was in the context, Your Honor, of the drop-dead date. If the court can understand the procedural posture, the condition precedent argument was never raised in affirmative defenses or in any other pleadings before the motion for the case. I thought the quote was the party's deal, referring to the entire deal, memorialized in a wholly unambiguous operating agreement and side letter. Isn't that the actual quote, the argument you made before the district court? It is, Your Honor, but it's important, again, to understand the context. At that point when I wrote my, was writing my summary judgment brief, this condition precedent argument had not been raised. It was not raised as an affirmative defense. It was not litigated below. So I was addressing that in the context of this drop-dead date, which the court never reached. This has to do with the issue of the anticipatory breach by the appellees when they decided when this time period in the operating agreement lapsed, their obligations ceased. But the drop-dead date relates to the conditions that had to have That's true. That is true, Your Honor. But there was ambiguity below at a minimum as to this issue of the open issues. The ambiguity was patent on the face of the contract. The parties agreed in that side letter that this purchase contract was going to be changed. As to extremely material terms, including price, and my clients gave testimony below that they knew the contract was likely to be completely rewritten. That is, the rest of the contract could significantly change between the time that they entered into their agreement and Well, that's extrinsic evidence. If you look at the terms of the written agreement, it says, it specifies one very and then says, and other stuff, which may seem to an outside reader as meaning things less important than price. You would think that if they're going to specify that the price could change, but they could also change what the property is that's being conveyed, that that's major enough that it would be included expressly, like the price, rather than tossed in with, you know, what color paper it's written on or something. That's a reasonable reading. One reasonable reading. Another reasonable reading is the parties contemplated that, for example, one immaterial piece of the contract, this small interior retail unit, could be taken off the table. But nothing on the face of the agreement suggests that one part of the property is small and immaterial. That's something that we know, if it's true, from testimony of your clients. Well, to go a step further, what are the open issues? I mean, that in and of itself requires going beyond the face of the contract. I mean, there was interpretation that was implicit that required the court to go look at extrinsic evidence to make its interpretation. At that point, the district court and this court, frankly, nobody looking at the face of that contract would know what the open issues are. You would necessarily need to go behind the contract and say, well, what are the open issues? What did the parties understand? What did it mean? The district court looked at the operating agreement. The district court looked at the balance of the contract and the transaction. At that point, having started to put evidence in. But that's still a little different than having a trial with witnesses. That's looking at documents that are incorporated by reference or implicitly in the agreement. But anyway, I have just one other question. Sure. Is drop dead date some kind of term of art? I mean, of course I understand what that might mean in the vernacular. I was a little surprised to see it as a formal thing in a contract. Is there some term of art there? Not of which I'm aware. Well, in the real estate, it was a defined term. Yeah. If that's true, then why? I mean, it certainly sounds to me like a drop dead date means then it's over. Well, look at the length, what the definition of drop dead date is. Well, it's not a definition exactly. It says that on this date, your side gets their money back, right? The capital contributions are returned. Right. But if that happens, then it is over, right? What could persist? What you're describing as the effect sounds to me more like it grants your clients an option, that they could take their money back and still hold Jacobov to all of his obligations as if you were still in it, and then you have your money back and you can take or leave whatever he comes back to you with. Not so. In the operating agreement, there is a provision that says when we need capital, members, you put your money down, just like in any other operating agreement. The parties are free in the LLC context to contract however they want to do their business arrangement. If they said, well, appellants, you don't need to have your money sitting there forever, but when time comes you better put the money back on the table because it's time to close, that was the deal they made. On the other hand, if they said. Well, the deal called for an extension, and there was one extension granted, right, until December. Yes. And then that was the new drop dead date. Yes. And then upon close to that date, the Concord and its principal gave notice that they weren't going to extend further. At which point it was allowable for my clients to withdraw their capital contribution, but what happens to the company? Does the company dissolve? Does it disappear? Do their other obligations, poof, go into thin air? No. There's a 30-page document with many, many obligations that persist after the moment the capital contributions are returned. So it can't be that the deal simply just disappears at that point. If the parties wanted to say all our obligations cease, this company will be dissolved, wound up, liquidated, and it's all over for us, then that's what they would have said. And in the side letter, there is an express condition proceeding that says when the deal is done. The deal is done only until we present the operating agreement to the lender and the lender says, I'm not accepting it. I don't want your friends, the appellants, to be part of this deal. Mr. Jacoboff, this was your contract. I'm not accepting it. That was what the parties agreed to. That's the only express condition proceeding in this whole transaction. So that's why the drop-dead date is really a red herring. It does not impact the parties' obligations. Thank you, counsel. You've saved two minutes for rebuttal unless my colleagues have questions. Good morning. Matthew Cappizzoli from Leach-Tishman-Robinson-Brav on behalf of the defendants appellees. Just a few things I want to address that came up in the initial argument. I take issue with the idea that the court had to search the agreements to determine whether the meaning of the term open issues. From defendant's own Rule 56—I'm sorry, not defendant's. From plaintiff appellant's own Rule 56 statement, this is Record AA-1044. It says that at the time the operating agreement and side letter were signed, the open issues relating to the scheduling of the closing were the OAG's release of restrictions on Shia Pacific's sale of the parking garage and retail space. This is an issue that wasn't just litigated in this motion. It was litigated in a prior summary judgment motion before Judge Bianco, and he reached the same determination that this judge did. There was an express condition pursued that barred the plaintiff's claims. It wasn't just that the issue wasn't raised below. We had law of the case at that point, and that is how the district court handled it when it delivered its opinion in the matter we're here with today. It's a very well-reasoned opinion. I don't feel the need to repeat all the judge's reasoning. Just a couple of other things. I disagree with counsel's interpretation of the Bank of New York Mellon case. That case does not stand for the proposition that every condition precedent has to expressly state the consequences of failure. What the court said in that case is the notice provision that was required was not sufficiently tied to the consequence provision. In other words, there was a notice provision, and then later it said that the party receiving notice, or after they learned about the breach or the default, had an obligation to repurchase. And the court basically said those are two different sections, and there's not enough here express language to tie them together. There's no requirement under New York law that every condition precedent expressly state the consequences of failure to be satisfied. The other thing I'll mention is that it's very clear to me, and I think to the district court,